IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICA'S HEATLH & RESOURCE CENTER, LTD., an Illinois corporation, and AFFILIATED HEALTH GROUP, LTD., an Illinois corporation, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16-cv-4539 |
| v. | ) ) | Hon. Thomas M. Durkin |
| ALCON LABORATORIES, INC., NOVARTIS PHARMACEUTICALS CORPORATION, and JOHN DOES 1-12, | ) ) ) ) | Hon. Young B. Kim |
| Defendants. | ) ) | |

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR PROTECTIVE ORDER REGARDING PLAINTIFFS'
RULE 30 (b) (6) NOTICE OF DEPOSITION SERVED ON
DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION

Plaintiffs America's Health & Resource Center, Ltd. and Affiliated Health Group, Ltd. ("Plaintiffs"), through their attorneys, submit this response to defendants Alcon Laboratories, Inc. ("Alcon") and Novartis Pharmaceuticals Corporation's ("NPC") (together, "Defendants") motion for protective order (ECF 118) regarding Plaintiffs' Rule 30 (b) (6) notice of deposition served on NPC.

## I. INTRODUCTION

On 10/5/17, Plaintiffs served a Fed. R. Civ. P. 30 (b) (6) notice of deposition on NPC (the "notice"). ECF 118-1 (Ex. A). On 10/24/17, NPC served written objections to the notice. ECF 118-1 (Ex. B). On 11/2/17, counsel conferred regarding NPC's

objections. ECF 118, p. 6. Plaintiffs' counsel later advised defense counsel that Plaintiffs intend to serve an identical Rule 30 (b) (6) notice of deposition on Alcon, except that topic nos. 17-18 to the NPC notice would be removed from the Alcon notice. Plaintiffs' counsel further advised that Defendants' respective corporate designees would be expected to authenticate and lay business records foundation for documents produced in discovery. ECF 118, p. 7-8; *see also* <u>Exhibit 1</u>, Declaration of Molly S. Gantman, at ¶ 3.

In their motion, Defendants argue that the topics in the notice (1) are overbroad, unduly burdensome, or disproportionate to the needs of the case, (2) lack reasonable particularity, and (3) impermissibly seek "discovery on discovery" that "may inappropriately implicate work product and attorney-client privileged matter." ECF 118, p. 14. As to NPC, Defendants' arguments are somewhat nonsensical given NPC's repeated denials that it had anything to do with any of the 600,000+ transmissions of fax advertisements at issue in this litigation (*i.e.*, how can it be burdensome to produce a corporate designee to say that?). As to Alcon—*i.e.*, Plaintiffs' notice to Alcon presumably will prompt the same substantive objections lodged by NPC and, therefore, both Defendants' objections can be disposed of in resolving this motion—Defendants' arguments fail on their merits.

## II. ARGUMENT

**A.    The topics in the notice seek relevant information within the permissible scope of discovery in this case.**

### 1.    Legal standard and relevant precedents.

Fed. R. Civ. P. 26 (b) (1) permits discovery of relevant matter proportional to the needs of the case. Relevant matter tends to make a fact of consequence more or less probable. Fed. R. Evid. 401.

Information pertaining to all faxes sent by or on behalf of a TCPA defendant advertising that defendant's goods or services during the operative time period is relevant to the scope and definition of any class that might be certified. *W. Loop Chiro. & Sports Injury Ctr., Ltd. v. N. Am. Bancard, LLC*, No. 16-CV-5856, 2017 WL 404896, *1-2 (N.D. Ill. Jan. 30, 2017); *see also Kane v. Nat'l Action Fin. Svcs., Inc.*, No. 11-115-5, 2012 WL 1658643, *5-6 (E.D. Mich. May 11, 2012) (rejecting as improper defendant's attempt to limit the scope of discovery, and ruling plaintiff was "entitled to seek discovery related to his [broadly drafted] complaint").

*W. Loop* and *Kane* are not outliers; they are exemplary. *See e.g.* (certified classes incorporating multiple broadcasts, not limited to fax advertisements attached to complaint or sent to plaintiff):

- *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) (certifying class of "[a]ll persons … who … [within the limitations period, were sent fax ads] … that bear the business name Community");

- *Saf-T-Gard Int'l., Inc. v. Vanguard Energy Svcs., LLC*, No. 12-C-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying class of: "all persons … who … [within the limitations period] were sent

unsolicited faxes ... promoting [defendants'] goods or services for sale");

- *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09-C-5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) (certifying class of "all persons who ... [within the limitations period, were sent faxes] advertising the commercial availability of [defendant's] property, goods or services");

- *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (certifying class of "all persons who, [within the limitations period were sent faxes] advertising the commercial availability of any property, goods, or services by or on behalf of defendant");

- *Green v. Svc. Master on Location Svcs. Corp.*, No. 07-C-4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) (certifying class of "[a]ll persons ... who: [] on or about [9/27/2006, 10/5/2006, 10/20/2006, 10/26/2006, 11/02/2006, 11/29/2006, 6/20/2007, or 6/22/2007], were sent a fax from Defendant offering cleaning services and listing 773-388-9200 as the telephone number to 'call for a Free Estimate'"); and

- *G.M. Sign, Inc. v. Grp. C. Comm., Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2012) (certifying class of "[a]ll persons that: [] during the period [12/6/2004, 12/22/2004, 1/19/2005, 2/2/2005, 4/14/2005, and 1/26/2006]; [] were sent one (or more) faxes identifying the website www.tfmshow.com").

Here, Plaintiffs must prove that all Rule 23 criteria are satisfied for the class that Plaintiffs seek to certify. The Court must conduct a "rigorous analysis of the evidence" to determine if that burden is met. *Saf-T-Gard Intern., Inc.*, 2012 WL 6106714, at *2. Plaintiffs must prove that there are questions of law or fact common to the class ("commonality"), and that Plaintiffs' claims (and Defendants' defenses as to Plaintiffs' claims) are typical of the claims of or defenses against the class ("typicality"). Fed. R. Civ. P. 23 (a) (2) and (3). Plaintiffs must also prove that class-

wide "questions of law or fact ... predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("predominance"). In some jurisdiction, Plaintiffs might also be required to prove that class members can be identified ("ascertainability"). *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 108 (N.D. Ill. 2013).

This case is not limited to the faxes sent to Plaintiffs, or to those particular fax campaigns. Plaintiffs seek to certify a class comprised of other recipients of the faxes sent to Plaintiffs **and** recipients of similar fax broadcasts sent by or on behalf of Defendants on or after April 21, 2012. ECF 40, at ¶ 26; *see also* Exhibit 2, Tr. of 9/27/17 hrg., at p. 49:23-25 ("I'm going to grant [plaintiffs' motion to compel] in part to the extent that plaintiffs should be able to get information regarding the other products that the plaintiffs have identified") (Kim, J.). As will be discussed below, Plaintiffs' Rule 30 (b) (6) topics are tailored to obtain discovery regarding the class that they seek to represent, and the Rule 23 issues that the Court will need to consider in deciding class certification.

### 2. Defendants' objections are without merit.

#### a. Topic nos. 1-13, 15 and 20.

##### (1) "Fax ad."

The notice defines the term "fax ad" to mean "any and all telephone facsimile messages transmitted on or after April 21, 2012, advertising or otherwise referencing any product manufactured, owned, sold, distributed and/or marketed by Alcon or Novartis, including but not limited to [eleven products currently owned by

NPC]." ECF 118-1 (Ex. A). Defendants suggest this definition encompasses *every fax* sent to or from Alcon or NPC on or after April 21, 2012, and is therefore "patently unreasonable and absurd," supposedly rendering topic nos. 1-13, 15 and 20 overly broad and unduly burdensome. ECF 118, pp. 11-12. Defendants are wrong.

Whether a particular fax constitutes an "advertisement" within the meaning of the TCPA is a disputed issue in this case. *See e.g.*, Exhibit 3,  Alcon objs. to Pltfs' 1st int. nos. 2-10 and 13-14 (objecting to Plaintiffs' use of term "advertisement" or related terms as "vague and ambiguous … as Alcon denies that the Exhibits constitute advertisements…"); Exhibit 4, Alcon objs. to Pltfs' 1st RFP nos. 3, 6-22 and 25-33 (same objections). Were Plaintiffs to limit the definition as suggested, ECF 118 at p. 12, Defendants could simply narrow their compliance to those documents that they concede to be "advertisements," resulting in the omission of most, if not all, potential fax ads that were received by putative class members, and eviscerate Plaintiffs' opportunity to certify the class as actually defined in their Amended Complaint—*i.e.*, a class of "[e]ach person that was sent one or more telephone facsimile messages promoting the commercial availability or quality of property, goods, or services offered by 'Alcon' or '[NPC]'[.]" ECF 40, Plaintiffs' Amended Complaint, at ¶ 26. Because "the class definition controls the scope of

discovery," Ex. 2, p. 51:11-12 (Kim, J.), the Court should reject Defendants' objection in this regard.[1]

(2) **Defendants' attempt to avoid disclosure of information relating to fax advertising after commencement of this litigation.**

The Court should similarly reject Defendants' attempt to avoid disclosure of information relating to fax advertising after commencement of this litigation. ECF 118, p. 12, n. 1. Evidence produced by third-party subpoena respondents appear to reveal that fax advertising campaigns occurred after commencement of this litigation. *See e.g.*, Exhibit 5, List of faxes transmitted by or on behalf of Defendants on or after April 21, 2012, at pp. 12,512-13,586. As those campaigns fall within Plaintiffs' proposed class definition (ECF 40, ¶ 26), Plaintiffs should be permitted to seek discovery relating to same.

(3) **General assertions of undue burden.**

Defendants assert that requiring them to prepare a corporate designee with the details surrounding their alleged TCPA violations, as well as all information regarding and supporting their affirmative defenses, would be overbroad and

---

[1]     Plaintiffs are not suggesting an overbroad definition of "fax ad" is necessary. Plaintiffs are saying the definition is not overbroad. The definition includes "any and all telephone facsimile messages transmitted on or after April 21, 2012, advertising or otherwise referencing any product manufactured, owned, sold, distributed and/or marketed by Alcon or Novartis, including but not limited to [eleven products currently owned by NPC]." ECF 118-1 (Ex. A) (emphasis added). The only language possibly exceeding that which Defendants concede to be consistent with an "advertisement" is the words "or otherwise referencing [Defendants' products]." If faxes referenced Defendants' products, Plaintiffs reserve the right to evaluate for themselves whether those faxes were "advertisements" under the TCPA. Defendants cannot reserve a unilateral right to make that determination.

unduly burdensome. ECF 118, pp. 12-13. In support, Defendants cite *U.S. ex rel. Fago v. M & T Mort. Corp.*, 235 F.R.D. 11 (D. D.C. 2006). There the court granted the plaintiff's motion to compel the defendant to produce a knowledgeable Rule 30 (b) (6) corporate designee on a variety of topics. *Id.* at 23-24. The motion was denied only as to one topic that would have required the designee to memorize 126 separate and unique document numbers, and correlate the same to 63 specific documents. *Id.* at 25. The court had already granted the plaintiff's motion to compel an answer to an interrogatory seeking the same information, so it reasoned there was no reason to compel the same information through a Fed. R. Civ. P. 30 (b) (6) deposition. *Id.* Nothing about *Fago* is remotely similar to the topics in the notice in the case at bar.

Nor is Defendants' position bolstered by the affidavit of their counsel. First, in disregard of the Court's repeated rulings clarifying that the scope of permissible discovery extends to all faxes advertising any and all of Defendants' products during the relevant time period, the affidavit inexplicably renews Defendants' twice-rejected argument that discovery should be limited to the five faxes sent to Plaintiffs (and three products advertised therein). ECF 118-1 (Ex. I at ¶¶ 6-7). There is no basis for the Court to revisit those rulings. Moreover, defense counsel's primary assertion—that it would be possible to prepare a corporate designee with details of the fax campaigns for the products advertised to Plaintiffs, but impossible to do the same for Defendants' other products, *see id.*—is illogical on its face. If

Defendants are admittedly able to prepare their designee to testify regarding three products, they can do the same for the other eight (or so) products, too.

>    b.    **Topic nos. 14 and 22-23.**

Defendants claim that all the information reasonably available to NPC pertaining to topic nos. 14 and 22-25[2] is contained in a verified answer to Plaintiffs' second set of interrogatories. ECF 118, p. 11 (citing to ECF 118-1, Ex. H, p. 2). Defendants make no reference to the particular answer to which they are referring, presumably because nowhere in that document does NPC verify that "it did not acquire Alcon's pharmaceutical brands until April 2016 and NPC had no involvement in Alcon's fax marketing campaigns during [what Defendants allege to be] the Relevant Time Period." *Id.* The closest NPC has come to verifying the same, or even remotely addressing topic nos. 14 and 21-23, is a single sentence in its preliminary statement to NPC's verified answer to Plaintiffs' second set of interrogatories: "In the time period at issue,[3] April 25, 2012-April 25, 2016 [sic], NPC was not involved in the fax marketing of Alcon products, including the

---

[2]    No. 14 seeks information concerning data, databases, or other information maintained by Novartis and conveyed to Alcon that could have been used for fax marketing. No. 21 seeks the circumstances surrounding NPC's acquisition of the products at issue in this case. No. 22 seeks NPC's role in advertising and/or marketing of the products at issue in this case on or after April 21, 2012. No. 23 seeks any role NPC plays relating to the manufacture, ownership, sale, distribution and/or marketing of the products at issue in this case.

[3]    Again, Defendants seek to unilaterally exclude all relevant faxing activity occurring after the commencement of this litigation by misrepresenting Plaintiffs' topics as pertaining only to the time period between April 21, 2012 and April 21, 2016. Plaintiffs note that evidence indicates some fax advertisements at issue in this case occurred after April 21, 2016. Exhibit 5.

9

Exhibits." *Id.* Plaintiffs question the veracity of this claim, as evidence produced by a third-party subpoena respondent indicates that NPC and Alcon exchanged fax-based marketing materials on or after April 21, 2012, and that faxes at issue in this litigation were transmitted after NPC alleges it acquired ownership interest in Alcon's products. Exhibits 5-6.

### c.  Topic no. 24.

Defendants assert, without explanation, that the corporate structure and hierarchy of Novartis AG and its American subsidiaries, including Alcon and NPC, have "nothing whatsoever to do with this litigation." ECF 18, p. 12. Corporate structure and hierarchy are relevant to liability, levels of control or interrelationships between the entities, and damages, because, for example, corporate hierarchy and structure, including interrelationship between companies, may reveal NPC's control, or right to control, relevant aspects of Alcon's advertising processes. This is neither a fishing expedition nor scorched-earth discovery. Plaintiffs are merely seeking basic information bearing on the structural interrelationships between Defendants within their global corporate family to ascertain whether their liability may be similarly interrelated. *See e.g., U.S. v. Genoa Healthcare Consulting, LLC*, 8:11-cv-1303-T-23TBM, 2013 WL 12172625, at *4 (M.D. Fla. Mar. 5, 2013) (granting motion to compel discovery regarding defendants' corporate structure).

### d.    Topic no. 25.

Defendants misconstrue topic no. 25 to require their corporate designees to be "personally familiar with and ready to testify regarding each of the tens of thousands of documents produced by Defendants in this case." ECF 118, p. 12. Plaintiffs merely seek a corporate designee who will authenticate the documents that Defendants have produced in response to Plaintiffs' written discovery requests. This requires no "personal familiarity" at all; Defendants merely need to tell their designee to agree that the documents are true and accurate copies of what they purport to be, and where the documents indicate date(s), time(s), authorship, transmission, etc., that information is true and accurate; in other words, business records foundation.

## B.    The topics included in the notice satisfy the Seventh Circuit's reasonable particularity standard.

### 1.    Legal standard.

Rule 30 (b) (6) provides that upon being served with a notice of deposition that specifies with "reasonable particularity" the topics on which the organization is expected to testify, the "named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf … about information known *or reasonably available* to the organization." Fed. R. Civ. P. 30 (b) (6) (emphasis added). The "flexibility in the rule was designed to curb corporate officers or managers from each disclaiming knowledge known to persons within the organization but also to protect corporations from having an unnecessarily large number of their officers or agents

be deposed." *Aldridge v. Lake County Sheriff's Office*, No. 11-C-3041, 2012 WL 3023340, at *1 (N.D. Ill. July 24, 2012) (internal citations omitted). In selecting its designee(s), the corporation "has a duty to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by the discovering party." *Id.* The duty to "present and prepare a Rule 30 (b) (6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *DSM Desotech Inc. v. 3D Systems Corp.*, No. 08-C-1531, 2011 WL 117048 (N.D. Ill. Jan. 12, 2011) (internal citations omitted). The deponent need only prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources. *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996) (*cited in DSM Desotech, supra*, at *1).

Citing *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058, n. 5 (7th Cir. 2000), Defendants claim that the Seventh Circuit has construed Rule 30 (b) (6)'s "reasonable particularity" requirement as establishing a "painstaking specificity" standard. ECF 118, pp. 9-10. The court did no such thing. Rather, the court merely cited to a Minnesota district court decision using the "painstaking specificity" language to criticize a proposed Rule 30 (b) (6) topic, that overbroadly sought "any matters relevant to [the] case," as not satisfying the Seventh Circuit's "reasonable particularity" standard. *Id.*

### 2. Defendants' arguments fail.

#### a. Topic nos. 1, 4, 11-12 and 19-23.

Citing *Kimberly-Clark Corp. v. Tyco Healthcare Retail Grp.*, Case No. 05-C-985, 2007 WL 601837 (E.D. Wis. Feb. 23, 2007), Defendants argue that the introductory language of these topics—*e.g.*, "all circumstances," "any and all knowledge," and "all roles played"—lack the reasonable particularity required by Rule 30 (b) (6). ECF 118, p. 13. In *Tyco*, the topic sought "any and all facts concerning the validity of the patents in suit." *Id.* at *3. The court took no issue with the "any and all" language. *Id.* Rather, it held that because there are "numerous grounds on which patents can be found invalid," Tyco should narrow its request to any and all facts concerning the specific areas of patent invalidity that may be relevant. *Id.* ("K-C should not have to give its employees a course on patent law in preparation for a Rule 30 (b) (6) deposition"). Here, topic nos. 1, 4, 11-12, and 19-23 use the above-quoted language in connection with specific subject matters, *i.e.*, the fax ads at issue in this litigation. *Tyco* does not support Defendants' objection to such language.

#### b. Topic nos. 2, 13-14.

Defendants argue that these topics "concern amorphous subjects, such as [NPC's involvement in developing and/or transmitting any of the fax ads] and "data and databases." ECF 118, p. 13. Defendants cite *Catt v. Affirmative Ins. Co.*, No. 08-cv-243-JVB, 2009 WL 1228605 (N.D. Ind. Apr. 30, 2009). There the topics that the court found to be "too broad" overlapped with deposition testimony already given by

at least four other deponents. Here, the deposition at issue is the first that Plaintiffs have sought to take. *Catt* is inapposite.

### C.    Topic nos. 17-18 are reasonable in light of evidence produced by third parties in this case, and do not implicate any privilege issues.

Topic nos. 17-18 seek information relating to NPC's repeated claims that after reasonable and diligent search, it can produce no documents or information in any way related to any of Plaintiffs' discovery requests. *See* NPC's objections, answers and responses to Plaintiffs' first set of written discovery requests, attached as Exhibits 7-8. Plaintiffs do not have to take NPC's self-serving representations in this regard at face value, especially where evidence obtained from third parties indicates NPC should at least possess some responsive information. For example, NPC claims it acquired ownership interest in the products at issue in this litigation sometime in April of 2016. ECF 118, p. 11. Yet evidence produced by third-party vendors indicates that fax advertising campaigns continued after April of 2016. Ex. 5.

Defendants' arguments about so-called "discovery on discovery" are misguided. Plaintiffs are unaware of any case law in the Seventh Circuit or elsewhere prohibiting litigants from verifying the thoroughness of their opponents' discovery compliance efforts, especially where evidence suggests any such efforts were plainly insufficient. *Martin v. Redline Recovery Service LLC*, Case No. 08-cv-6153, 2009 WL 959635, *1 (N.D. Ill. Apr. 1, 2009) (ordering defendant to provide "an affidavit [of] what efforts it has undertaken to obtain the [requested discovery], and if it is unable to locate them explain why"). No "unnecessary expense [or] delay"

14

could possibly result from requiring NPC to support its repeated assertions of reasonable, good faith efforts to locate responsive documents.

Nor do these topics implicate privileged issues; they merely seek information reasonably available to NPC regarding its efforts to comply with Plaintiffs' written discovery requests. That someone at NPC may have communicated with defense counsel regarding the same does not render the facts contained in those communications privileged—it is the communications, not the facts, which are entitled to privilege. *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981) (privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney).

## D. NPC's alternative proposed topics should be rejected.

Plaintiffs' original 25 notice topics (1) fall squarely within the relevant and permissible scope of discovery at issue in this case, (2) satisfy Rule 30 (b) (6)'s "reasonable particularity" standard, (3) are reasonable in light of evidence produced by third-party vendors in this case, and (4) do not implicate any privilege issues. Therefore, NPC's "Alternative Proposed Topics" should be rejected.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for a protective order regarding the notice (ECF 118), overrule any objections Defendants have to the noticed topics, and grant such other and further relief as the Court may deem just and proper.

15

Dated: January 19, 2018                    Respectfully Submitted,


By: _____

Phillip A. Bock
Daniel J. Cohen
Molly S. Gantman
BOCK, HATCH, LEWIS AND OPPENHEIM, LLC
134 N. La Salle St., Suite 1000
Chicago, IL 60602
(312)658-5500
molly@classlawyers.com

## CERTIFICATE OF SERVICE

I am an attorney of record in this case. I hereby certify that on January 19, 2018 I caused a copy of the foregoing to be filed via the Court's ECF filing system, whereupon all counsel of record were served.

/s/ Molly S. Gantman
Attorney for Plaintiff