UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICA'S HEALTH & RESOURCES, CENTER, LTD., et al., | ) ) ) | No. 16 CV 4539 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| ALCON LABORATORIES, INC., et al., | ) ) ) | February 15, 2018 |
| Defendants. | ) | |

**ORDER**

Before the court is Defendants' motion for protective order regarding Plaintiffs' Rule 30(b)(6) notice of deposition served on Defendant Novartis Pharmaceuticals Corporation ("Novartis"). In this case, Plaintiffs allege that "Defendants violated 47 U.S.C. § 227(b)(1)(C) by sending advertisements by facsimile . . . to [them] and [to] the other class members without first obtaining their prior express invitation or permission." (R. 40, Second Am. Compl. ¶ 42.) Plaintiffs further assert that these facsimiles lacked the requisite and compliant opt-out notices. (Id. ¶¶ 43-50.) On October 5, 2017, Plaintiffs served Novartis with a Rule 30(b)(6) notice of deposition, which includes the following 25 topics of inquiry:

1. Any and all circumstances that led to the sending of any Fax Ads.

2. Any and all involvement of Novartis in developing and/or transmitting any Fax Ads.

3. Any and all benefits conferred upon Novartis as a result of the Fax Ads.

4. Any and all knowledge held by Novartis regarding Alcon's fax advertising activities and/or Fax Ads.

5. The manner and method of developing and sending any Fax Ads, including computer formats and software used, and including any vendors who assisted with the development or sending of any Fax Ads.

6. The form or template images of any Fax Ads that were sent, the forms or templates thereof used over time, and the persons involved in designing those forms or templates.

7. The number of separate broadcasts of Fax Ads that were attempted to be sent, and that were successfully sent.

8. The facsimile numbers to which, and persons to whom, Fax Ads were sent, and how those numbers and names were compiled.

9. Whether and to what extent Novartis and/or Alcon allegedly obtained prior express permission before sending Fax Ads, and the persons from whom Novartis and/or Alcon allegedly obtained such permission.

10. Whether and to what extent Novartis and/or Alcon allegedly had a prior existing business relationship with any person to whom, or entity to which, Fax Ads were sent, and the persons with whom such relationship(s) allegedly existed.

11. All circumstances surrounding Novartis' authorization, if any, for the development and/or transmission of Fax Ads by or on behalf of either Alcon or Novartis, or both, as well as Novartis' payment for the same or contribution thereto.

12. Any and all persons with knowledge of the sending of Fax Ads, and the sources of their knowledge.

13. Data and databases maintained by Novartis containing names and/or contact information of any intended or actual recipients of Fax Ads.

14. Data, databases or other information maintained by Novartis and conveyed to Alcon for marketing purposes, or for marketing purposes that could have included fax marketing, on or after April 21, 2012.

2

15. Whether Novartis received, and how Novartis handled, requests not to receive additional Fax Ads, or other complaints about them.

16. Novartis' interactions with Plaintiffs, or any individual affiliated with Plaintiffs, at any time.

17. Novartis' efforts to collect and produce documents in response to Plaintiffs' document requests, including a detailed description of the types of searches that were conducted, the location(s) of files, records or databases searched, and the identities of the individuals who conducted such searches.

18. Novartis' efforts to answer Plaintiff's interrogatories, including a detailed description of the files, records or databases searched, the location(s) of such files, the identities of the individuals who were interviewed, the titles of each such individual, and the responsive knowledge provided by each such individual.

19. All circumstances surrounding Nick Ruth's involvement in the 2013 Ilevro campaign.

20. All circumstances surrounding any of Novartis' agents or employees involvement in any Fax Ads.

21. All circumstances surrounding Novartis' acquisition of the following brands: Moxeza; Vigamox; Pataday; Durezol; Simbriza; Tobradex; Travatan Z; Patanol; Ciprodex; Ilevro; and Pazeo.

22. All roles played by Novartis in advertising and/or marketing the products identified in Topic No. 21, *supra*, on and after April 21, 2012.

23. All roles played by Novartis, as distinct from Novartis AG and Alcon, relating to the manufacture, ownership, sale, distribution and/or marketing of the drugs identified in Topic No. 21, *supra*, on and after April 21, 2012.

24. The corporate structure and hierarchy of Novartis AG and its subsidiaries and entities doing business in the United States of America, including but not limited to Alcon or Novartis.

> 25. All records, if any, Novartis presently maintains or that have existed in the past, with regard to any of the foregoing topics.

(R. 118-1, Defs.' Mot. Ex. A at 2-4.) In the notice, Plaintiffs defined "Fax Ads" to include "any and all telephone facsimile messages transmitted on or after April 21, 2012, advertising or otherwise referencing any product manufactured, owned, sold, distributed and/or marketed by Alcon or Novartis, including but not limited to Moxeza, Vigamox, Pataday, Durezol, Simbrinza, Tobradex, Travatan, Patanol, Ciprodex, Ilevro, and Pazeo. (Id. at 2.)

Novartis opposes these topics because, it says, they are too broad in scope and they make it unreasonably onerous for it to adequately prepare a designee. Novartis also points out that the term "Fax Ads" as defined by Plaintiffs in their deposition notice, (id. at 2), includes virtually any fax transmitted by it to anyone since April 2012. Novartis moves the court to replace what it characterizes as these overbroad topics with what appear to be 11 Novartis-friendly topics. In response to the motion, Plaintiffs express no interest in inquiring about these 11 topics and assert that the 25 topics they identified are legitimate topics of inquiry in this matter.

Based on the information provided by the parties, and having reviewed Plaintiffs' second amended complaint, the focus of discovery against Novartis should be much narrower and should relate to Novartis's involvement, if any, with Defendant Alcon Laboratories, Inc.'s ("Alcon") fax marketing campaign of its products. Novartis's motion is granted in part and denied in part as follows:

4

| Topics | Rulings |
|---|---|
| 1 | The motion is granted and this topic is stricken.  The court agrees with Novartis that the scope of this topic is extremely broad and, as correctly argued by Novartis, "Fax Ads" as defined by Plaintiffs include all faxes Novartis sent since April 12, 2012, because the definition states that Novartis's designee must be able to discuss all faxes referencing any of its products, which are not the subject matter of this action.  Furthermore, Plaintiffs do not explain what they mean by "circumstances."  This is not particular enough to allow Novartis to reasonably prepare a designee to appear for a Rule 30(b)(6) deposition. |
| 2-5, 7, 8, 11, 12, 13, 14, 15, 19, 20, 22 | The motion is granted in part to the extent that the scope of these topics is limited as described herein.  The court finds that the scope and the subject matter of these topics are proper but the definition of "Fax Ads" must be limited to the fax campaign executed by Alcon as described in Plaintiffs' Second Amended Complaint.  These topics may include the time period after the filing of the complaint on April 21, 2016.  If Novartis had no involvement whatsoever with Alcon's fax marketing of its products as it seems to assert, the burden on it to prepare a designee would be minimal and, more likely than not, many of these topics would not even be covered at the deposition. |
| 6 | The motion is granted in part to the extent that the scope is too broad.  However, this topic may be limited to the designee identifying Novartis employees and agents involved with the designing of the fax forms and templates Alcon used in its marketing campaign, if any. |
| 9, 10 | The motion is granted in part.  The court finds that the scope and the subject matter of these topics are proper but the definition of "Fax Ads" must be limited to the fax campaign executed by Alcon as described in Plaintiffs' Second Amended Complaint.  These topics may include the time period after the filing of the complaint on April 21, 2016, only if Novartis itself provided fax numbers or names of target recipients to Alcon or Novartis has knowledge about Alcon's practices. |
| 16 | The motion is granted and this topic is stricken.  The scope of this topic is too broad and the reasonable investigation Novartis must conduct to prepare its designee would be unduly burdensome. |
| 17, 18 | The motion is granted and these topics are stricken.  The court agrees with Novartis that these topics amount to discovery on discovery which is not within the scope of permissible discovery.  If Plaintiffs believe that Novartis's discovery responses are inadequate, they should file a motion to compel instead. |
| 21 | The motion is granted and this topic is stricken. The scope of this topic is too broad to the extent that it covers information not relevant to this case. |
| 24 | The motion is granted in part to the extent that this topic must be limited to Novartis's corporate relationship with Novartis AG and Alcon |

|  | so that Plaintiffs may gain a better understanding of Novartis's preliminary statement included in its answers to Plaintiffs' Second Set of Interrogatories. (See R. 118-1 at 58.) |
|---|---|
| 25 | The motion is granted because Novartis has agreed to provide a stipulation authenticating the documents it produced in response to discovery requests. |

          **ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**