IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICA'S HEATLH & RESOURCE CENTER, LTD. and AFFILIATED HEALTH GROUP, LTD., Illinois corporations, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) | |
| | ) | Case No. 16-cv-4539 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Thomas M. Durkin |
| ALCON LABORATORIES, INC., NOVARTIS | ) | Hon. Young B. Kim |
| PHARMACEUTICALS CORPORATION, *et al.*, | ) | |
| Defendants | ) | |

PLAINTIFFS' RESPONSE TO WESTFAX, INC.'S
JANUARY 26, 2018 "STATUS UPDATE DISCOVERY"
AND RENEWED MOTION FOR SANCTIONS

Plaintiffs America's Health & Resource Center, Ltd. and Affiliated Health
Group, Ltd. ("Plaintiffs"), by counsel, submit this response to WestFax, Inc.'s
("WFI") 1/26/18 "Status Update Discovery" (ECF 133) ("status update"), and renew
their previous motion for sanctions against WFI.

## I. Introduction

WFI's status update cannot be accepted at face value because it is not verified
or supported by evidence. The Supreme Court and the Seventh Circuit adhere to the
uncompromising principle that unsupported statements of counsel in papers filed in
court are not evidence and do not count. *INS v. Phinpathya*, 464 U.S. 183, 188–89 n.
6 (1984); *U.S. v. Adriatico–Fernandez*, 498 Fed. Appx. 596, 599–600 (7th Cir. 2012).

WFI appears to deny any involvement in the fax advertisements at issue in
this litigation (the "fax ads"), or at least deny it has any relevant documents
responsive to the subpoena duces tecum ("SDT"), Exhibit A, served on it on 9/26/17.

*See e.g.*, ECF 133 at pp. 1, 5. WFI also appears to impute those denials to Digital Messaging Solutions, Inc. ("DMS"), another third-party SDT respondent responsible for WFI's involvement in the fax broadcasts herein issue, which is also currently represented by WFI's counsel, William B. Hayes ("Hayes*"). Id.*, p. 3, ¶ 10; Exhibit B (1/24/18 email from DMS's second counsel advising of DMS's retention of Hayes).

The crux of WFI's denials is its assertion that because of the "degrees of separation between Defendants and [WFI,]" Plaintiffs' efforts to obtain evidence from WFI are futile. *Id.*, p. 4. However, this alleged separation does not alter the fact that WFI was the fax broadcaster for the subject broadcasts. Exhibit C (DMS's 9/7/17 response to Plaintiffs' SDT stating that WFI performs all of its fax broadcasting activity); Exhibit D at ¶¶ 2-3 (declaration of PFN Communications, Inc. ("PFN") confirming that for Defendants' fax ad campaigns, PFN received from D&R Lathian, Inc. ("DRL") a copy of the ad to be transmitted along with a list of intended recipients of that fax ad (the "target list"), which PFN forwarded to DMS, along with a list of fax numbers that PFN purchased from InfoUSA, for matching and transmission); Exhibit E (10/19/17 letter from DRL stating that for all fax ad activity on Defendants' behalf, DRL subcontracted out the actual transmission of fax ads to PFN); Exhibit F (test faxes sent by WFI, produced by SDT respondent Contemporary Graphic Solutions, Inc. ("CGS"), located in subfolders of an "Alcon" file for Ciprodex and Pazeo fax ad returns[1] and bearing WFI's signature transmission header, found on almost all of the 50,000+ fax-ad return slips

---

[1] "Fax-ad return" means pages of a fax ad received by a target and returned by fax to either request product samples or opt out of future fax communications.

produced by CGS); *See* Declaration of Molly S. Gantman, <u>Exhibit G</u> at ¶ 3. WFI's status update thus appears designed to mislead the Court as to WFI and DMS's true involvement.

## II. Background

The SDT seeks documents relevant to the claims and defenses raised by the parties. Discovery to date reveals that WFI was the fax broadcaster for hundreds of thousands of fax ads at the heart of this action. Instead of complying with the SDT, or filing timely objections, WFI simply ignored it until nearly three months after it was served, and after Plaintiffs filed their motion to compel WFI's compliance. <u>Exhibit H</u>. The day transfer of the motion to this Court was granted, WFI sent a document to Plaintiffs' counsel purporting to be its "response" to the SDT, stating "None" 19 times, and "not applicable" one time. <u>Exhibit I</u>.

On 12/11/17, the Court ordered Hayes to file an appearance by 12/15/17, and WFI to respond to the motion by 12/29/17. ECF 117. The next day, Hayes asked Plaintiffs' counsel whether WFI performed services for Alcon. <u>Exhibit J</u>. Plaintiffs' counsel responded with examples of the faxes transmitted by WFI, and the response from DMS's then-counsel identifying WFI as the broadcaster, along with a list of all third-party vendors and the products at issue in this litigation. <u>Exhibit K</u>.

On 12/15/17, Hayes complained that the SDT required more than what WFI typically provides in response to "inquiries," that he wanted more information before he invested the time, effort and expense to retrieve responsive documents, and that a release from each of WFI's customers was required before he could

produce such documents. *Id.* Plaintiffs' counsel responded that WFI's typical practice was irrelevant in the face of a SDT, and that given the exemplary faxes, DMS's response identifying WFI, and the list provided of vendors/products involved in this litigation, WFI had the information it needed to search its servers, systems and platforms to locate responsive documents. *Id.*

On 1/9/18, having neither appeared by 12/15/17, nor filed a response by 12/29/17, as ordered, Hayes sent an email stating he was "more confused than ever." Exhibit L. Two hours later, the Court issued granted Plaintiffs' motion to compel directed to WFI and ordered WFI to respond by 1/23/18. ECF 123.

On 1/19/18, Hayes stated he believed WFI already responded to the SDT. Exhibit M. He acknowledged WFI provided fax broadcasting services to DMS, but asserted WFI did not have records indicating for whom DMS was working. *Id.* Despite evidence clearly indicating WFI's involvement in fax broadcasts advertising Alcon's products, Hayes denied any such faxes were sent via the WFI platform. *Id.*

On 1/23/18, Hayes produced seemingly manufactured invoices for 2016-2017 (Exhibit N), and denied WFI or DMS's involvement with the subject fax ads, Exhibit O ("DMS and WFI do not have any faxes or lists for the Defendants' faxes"), which was contradicted by evidence previously provided to him. Exs. B-F and G *supra*.

### III. WFI'S willful withholding of relevant and responsive documents

The following outlines relevant and responsive information or documents that WFI has failed to produce:

A.    **Customer agreements, reports, account information, and emails.[2]**

After disclaiming possession of responsive documents, WFI identified types of responsive documents that it does have in its possession, custody or control. ECF 133, pp. 1, 2-3 at ¶ 6, and p. 5. For example, WFI admitted it maintains "Customer Agreement[s] and Account Set-Up Form[s], customer reports, if any, summary invoices and anything else it may have" for each of its customers. *Id.*, p. 3, ¶ 6. WFI has had the information it needs to locate those documents since 9/26/17. Exs. A, K.

Yet more than four months later, WFI apparently has not conducted any search at all. Ex. K (refusing to search for responsive documents); ECF 133, p. 1 ("Plaintiff's [sic] counse [sic] has not given WFI information to enable WFI to make a further search"). WFI has failed to produce a single communication between itself (or any of its email accounts) and any party or SDT respondent involved in this case. Such communications have been produced by WFI in other cases, and should be retrievable from WFI's servers. Ex. G, ¶ 5.

B.    **Detailed invoices and databases used to generate same.[3]**

WFI's claim that it only provides its customers with "summary invoices," ECF 133, p. 2, ¶ 5, is simply false. WFI provides its customers with detailed invoices including descriptions of each broadcast. These detailed entries contain the dates of transmission, the number of pages transmitted and received by the intended recipients' fax machines, and a unique job identification number. Exhibit P (invoice dated 8/31/17, produced by DMS as an "example" of the types of invoices it receives

---

[2]    These documents are responsive to request nos. 1.1-1.4 and 1.6. Ex. A

[3]    These documents are responsive to request nos. 1.6-1.7. Ex. A.

from WFI and containing detailed broadcast entries); Exhibit Q, p. 49:16-22 and Exhibit 3 thereto (WFI's owner Barry Clark testifying that the detailed format in Ex. Q has been in use since at least 2015); *id.* at pp. 51:14-17, 52:12-15, and 53:23-54:4 (Clark explaining the meaning of each entry). Although WFI admits its business relationship with DMS is "many years old," it failed to produce a single detailed invoice sent to DMS since April 21, 2012. ECF, p. 4, ¶ 13; Ex. G, ¶ 6.

WFI's failure to produce a single detailed invoice is further evidence of its failure to make any effort, good faith or otherwise, to comply with the SDT. In *Comprehensive Health Care Systems, et al. v. M3 USA Corp., et al.*, No. 16-cv-80967 (S.D. Fla.) (proceedings stayed pending possible FCC declaratory ruling), WFI produced over 1,100 pages of invoices generated by WFI as a result of M3's faxing activities for a period of time between 1/2/15 and 6/2/16. Ex. Q, pp. 83:20-84:23. If any additional M3-related invoices existed, Clark testified "those invoices would have been found in the course of the search of [WFI's] business records." *Id.*, pp. 84:24-85:4. The plaintiffs in *M3* did not allege illegal fax activity prior to 1/2/15, or after 6/2/16, and were not seeking discovery from WFI predating 1/2/15. Here, however, Plaintiffs allege the subject illegal fax activity began as early as 4/30/12, and may still be ongoing. *See e.g.*, Exhibit R. Despite WFI's 4/20/17 testimony that it is capable of searching its records for customer specific invoices, WFI now maintains that "Plaintiff's [sic] counse [sic] has not given WFI information to enable WFI to make a further search." ECF 133, p. 1. Obviously, WFI is withholding large volumes of detailed invoices responsive to the SDT.

**C.** **Detailed transmission/delivery reports, summary reports, and databases used to generate same.[4]**

WFI emails its customers a "summary report" following each broadcast transmitted from reports@WFI.com. ECF 133, p. 4, ¶ 14; *see also* Exhibit S (summary report to DMS dated 8/17/17). These reports include account number, job name, list count, date/time job completed, number of removals, number of faxes transmitted successfully/unsuccessfully, and number of pages transmitted. *Id.*

In addition to the summary reports, customers may request "detailed reports" indicating when each fax ad was transmitted to, and received by, each target. ECF 133, p. 2, ¶ 5, p. 4, ¶14; Ex. G, ¶ 7. DMS ordered detailed reports for all broadcasts initiated on Defendants' behalf. Exhibit T (DMS's fax broadcasting service "Feature[s] & Benefits" include "Detailed deliver reporting"). And yet neither DMS nor WFI have produced any detailed reports or summary reports in response to the SDTs. Ex. G, ¶ 8. Such reports should be retrievable from WFI's servers. *Id.*

**D.** **Information sufficient to identify WFI's telephone numbers, long-distance service providers, and email accounts and providers.[5]**

Despite its alleged response, WFI cannot in good faith deny using telephone numbers, long-distance service providers, or email accounts in connection with its fax broadcasting.[6] Ex. I, nos. 15-17. Such information may provide Plaintiffs with

---

[4]     These documents are responsive to request nos. 1.2-1.3, 1.9 and 1.18. Ex. A.

[5]     This information is responsive to request nos. 1.15-1.17. Ex. A.

[6]     WFI's own website boasts, "WE KNOW FAX" as a "SECURE. FAST. AFFORDABLE." broadcast fax service allowing users to achieve "MASSIVE DISTRIBUTION" while "AVOID[ING] SPAM FILTERS." and indicating that WFI uses phone numbers and email addresses. Exhibit U.

alternative sources of information relating to the subject fax broadcasts. WFI should be ordered to comply with request nos. 1.15-1.17.

### E.    One Wilshire Data Center documents.[7]

WFI claims the data and documents stored in the One Wilshire Data Center relating to the fax ads are "not applicable." Ex. I, no. 20. But that is where "WFI receive[s] recipient opt-out requests." Exhibit V (Clark verified statement dated 8/22/17). Information about, and held by, that data center, including but not limited to contracts, removal lists, and other data relating to the subject fax ads, are responsive and should be produced.

## IV.  Argument

### A.    Plaintiffs are entitled to SDT compliance from WFI.

WFI waived any and all objections to the SDT by failing to timely lodge objections. WFI further failed to timely file a response to Plaintiffs' motion to compel, as ordered by this Court. Therefore, Plaintiffs are entitled to WFI's full and unlimited compliance with each and every aspect of the SDT. Obviously, WFI has not provided such compliance. To the contrary, WFI and its counsel, Hayes, have engaged in disingenuous misdirection and deception to create the impression that WFI cannot even begin to look for responsive documents, while at the same time asserting without any basis—and irreconcilably with other documents produced in this case—that neither WFI nor DMS provided any fax advertising services involving Defendants' products. But again, the documents discussed above indicate

---

[7]    These documents are responsive to request no. 2. Ex. A.

otherwise, and WFI's belated representations to the contrary simply cannot be accepted at face value. WFI should be ordered to provide full compliance.

## B. WFI's disregard for the judicial process justifies a finding of contempt and the imposition of sanctions.

A party who, "having been served, fails without adequate excuse to obey the subpoena or an order related to it[,]" may be held in contempt. Fed. R. Civ. P. 45 (g). To prevail on a request for a contempt finding, the movant must establish that:

> (1) [A] court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply.

*S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010); *Boehm v. Scheels all Sports, Inc.*, No. 15-cv-379-jdp, 2016 WL 6124503, at *2 (W.D. Wis. Oct. 20, 2016).

WFI's disregard for the Court's orders and the judicial process justifies a finding of contempt and imposition of sanctions against. *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, No. 07 CIV. 3635 (DC), 2008 WL 3852046, at *2 (S.D. N.Y. Aug. 13, 2008) (granting motion for contempt and sanctions against discovery respondent that failed to comply with or object to subpoena, failed to respond to motion, and failed to comply with order relating to same); *PaineWebber Inc. v. Acstar Ins. Co.*, 211 F. R. D. 247, 248 (S.D. N.Y. 2002) (same); *Horton v. Maersk Line, Ltd.*, No. CV412-127, 2012 WL 5385611, at *1 (S.D. Ga. Oct. 22, 2012) (granting motion for contempt and sanctions against respondent who ignored subpoena and failed to respond to motion); *LHF Prods., Inc. v. Doe*, No. 3:16-CV-00716-AC, 2016 WL 6208269, at *3

(D. Oregon Oct. 21, 2016) (same); *Dallas Buyers Club, LLC v. Doe*, No. 3:15-CV-731-AC, 2016 WL 96152, at *3-4 (D. Oregon Jan. 7, 2016) (same).

The *Boehm* respondent failed to produce documents for six months despite a subpoena and a court order compelling it to comply. *Boehm*, 2016 WL 6124503, *2. The respondent repeatedly denied having possession of such documents until at least four months after service of the subpoena. *Id.* at *1-2. The court found the respondent "did not make a reasonable and diligent effort to comply with the court orders" and ordered it to "pay as sanctions all attorneys fees and costs associated with plaintiffs' counsel's efforts to obtain the [documents] at issue, including: (1) following up on the[ir] subpoena response; (2) conferring with [the respondent and its attorney]; (3) filing a motion to compel; (4) conducting [a deposition]; and (5) filing a renewed motion for sanctions." *Id.* at *2.

Here, WFI has repeatedly denied possession of responsive documents notwithstanding hard evidence indicating to the contrary, and willfully ignored two separate Orders of this Court. Like the court in *Bohem*, this Court should find WFI has failed to make a reasonable and diligent effort to comply with the SDT and Court Orders, hold WFI in contempt, and impose sanctions, including attorney fees and costs associated with Plaintiffs' counsel's efforts to obtain WFI's compliance with the SDT.

## C.  Hayes' conduct violated 28 U.S.C. § 1927, warranting sanctions.

An attorney who vexatiously multiplies proceedings in violation of 28 U.S.C. § 1927 may be responsible for "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An attorney who

10

pursues "a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound" has "vexatiously multiplied proceedings" in violation of § 1927. *Martinez v. City of Chicago*, No. 09-C-5938, 2014 WL 6613421, at \*6 (N.D. Ill. Nov. 20, 2014). Monetary sanctions against counsel for a violation of § 1927 "are appropriate when counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules or court orders." *Id.*

In *Martinez*, an assistant State's attorney ("ASA") claimed the documents sought by the plaintiff did not exist, but thereafter documents were obtained contradicting that representation, and plaintiffs filed a motion to compel. *Id.* at \*7. In response, the ASA insisted the documents did not exist, or could not be located or produced without extraordinary levels of resources. *Id.* After issuing several orders relating to these documents, the court finally permitted the plaintiff to inspect the room where the files might be located. The plaintiff's counsel located the documents "within a matter of minutes." *Id.* The court found that the "most generous inference" it could draw from the ASA's misrepresentations was that she failed to "speak with the custodian of [the documents] before making [such] statement[s]." *Id.* If she had, she could not have made such misrepresentations in good faith. *Id.* Thus, the ASA's conduct was "reckless," both in denying the existence of the documents, and in overstating the time and resources it would take to locate the documents. *Id.* The court also found that by lodging "bogus objections" after it became apparent the documents did indeed exist, and by failing to make reasonable accommodations for

plaintiffs to search for the documents, the ADA unreasonably and vexatiously multiplied proceedings in violation of § 1927. *Id.* Accordingly, the court awarded the plaintiff attorneys' fees and costs incurred in retrieving the documents. *Id.* at *8.

An attorney can also violate § 1927 by remaining silent if evidence indicates such silence is "designed to shroud the true state of affairs" and intentionally mislead the court and the opposing parties. *B & H Mfg., Inc. v. Foster-Forbes Glass Co.*, 143 F.R.D. 664, 671 (N.D. Ind. Jul. 29, 1992). In *B & H*, defense counsel failed to disclose the identity of the proper defendant—*i.e.*, the company that owned the "shell corporation" named as defendant. *Id.* The court found defense counsel had numerous opportunities to disclose the proper defendant: when he answered plaintiff's complaint; when he branded the true defendant as a "non-party" or "third-party" in a memorandum; when he responded to plaintiff's written discovery requests; or when the plaintiff made its suspicions of the defendant's relationship with the proper defendant known. *Id.* at 671. The court concluded that such a combination of "unreasonable and vexatious conduct could only have been inspired with a view to maximize[e] [plaintiff's] troubles with discovery," "evinces deliberate recklessness," and was "designed to shroud the true state of affairs" *Id.* The court concluded defense counsel violated 28 U.S.C. § 1927, and imposed sanctions. *Id.*

Like the ASA in *Martinez*, here Hayes has repeatedly represented that WFI has no documents or information responsive to the SDT exist, or if they do, it would be unduly burdensome and time consuming to locate same. A reasonably careful attorney who reviewed a fraction of the evidence available to Hayes would have

known WFI has responsive documents. A reasonably careful attorney would not have produced manufactured invoices at all, especially when they would be reviewed by attorneys who know, from past experience with WFI, what authentic WFI documents look like. A reasonably careful attorney could not have alleged, in good faith, that the most pervasive facilitator of mass TCPA violations in the United States does not use phone numbers, long distance carriers, or email addresses in connection with its fax broadcasting services. But Hayes did. Lke the attorney in *B & H*, Hayes has exhibited behavior "designed to shroud the true state of affairs," seizing upon every opportunity to maximize Plaintiffs' troubles with discovery, or gain some advantage for his client (or at least visit some inconvenience on Plaintiffs' counsel). This Court should find Hayes has vexatiously multiplied proceedings in violation of 28 U.S.C. § 1927. He should be held in contempt, and ordered to Plaintiffs' attorneys' fees and costs incurred due to his obstructive misconduct.

**D.     A per diem penalty against WFI is warranted.**

A district court has broad discretion in fashioning and imposing sanctions for civil contempt "to coerce obedience to a court order or to compensate complainant for losses sustained as a result of the contumacy." *U.S. v. Berg*, 20 F.3d 304, 331 (7th Cir. 1994) (citing *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988)). Imposing a per diem monetary fine against a recalcitrant discovery respondent is permissible for the purpose of coercing said respondent to comply with a court discovery order as soon as possible. *Id*; *see also V.I.M Recyclers v. Manger*, No. 03-C-0343, 2004 WL 906313, at *3 (N.D. Ill. Apr. 27, 2004) (granting plaintiff's motion to enforce per diem monetary sanctions for each day recalcitrant discovery

respondent failed to comply with order requiring compliance); *Masonry Inst. Bricklayers Local 21 Pension Fund v. Grove Constr., Inc.*, No. 93-C-2754, 1994 WL 148681, at *5 (N.D. Ill. Apr. 21, 1994) (per diem monetary sanction would be imposed for each day subpoena respondent failed to comply).

In *Berg, supra*, the Court upheld a per diem penalty for noncompliance with a discovery order, reasoning the discovery respondent could have avoided the penalty by complying with the order. *Id.*, 20 F.3d at 311. Similarly, in *Manger*, *supra*, the court found the respondent could have avoided the per diem monetary sanction "by producing the documents sooner rather than later." *Id.*, 2004 WL 906313, at *3. The court imposed a per diem sanction after the respondent failed to comply with previous compliance orders. *Id.* at * 1.

In *Sjoblom v. Charter Communications, LLC*, No. 07-CV-451-bbc, 2008 WL 4642641, * 1 (W.D. Wis. Mar. 28, 2008), the discovery respondent failed to fully comply with the plaintiff's discovery requests until more than a month after the court issued its order compelling compliance. *Id.* at *1. Reasoning that the respondent "had more than two months to compile information in response to plaintiff's [discovery] requests before being ordered to do so by the court," and that its compliance was still incomplete, the court ordered the respondent to pay plaintiffs $1,000 a day. *Id.* at * 5. In addition, the court ordered the respondent to pay plaintiff's costs and fees associated with bringing the motion, and stated it "would consider additional, more severe [per diem monetary] sanctions after

hearing from the parties" as to whether the respondent thereafter had fully complied. *Id.* at *5.

Here, as in the cases cited above, WFI had months to locate and compile documents responsive to the SDT before the Court issued its 1/9/18 Order. Ex. A; ECF 123. Instead, WFI refused to even undertake a search, has now violated multiple Orders issued by the Court, and continues to withhold responsive documents. Given WFI's past disregard for the Orders of this Court, and the judicial process in general, the imposition of a per diem penalty is necessary to ensure WFI's compliance.

## V. Conclusion

WHEREFORE, Plaintiffs pray this Honorable Court grant the relief requested herein, and for such other and further relief as the Court may deem just and proper.

Dated: February 20, 2018        Respectfully Submitted,

By: _____

Phillip A. Bock
Daniel J. Cohen
Molly S. Gantman
BOCK, HATCH, LEWIS AND OPPENHEIM, LLC
134 N. La Salle St., Suite 1000
Chicago, IL 60602
(312)658-5500
molly@classlawyers.com

15

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on February 20, 2018, she caused the foregoing to be filed using the Court's CM/ECF system, which automatically serves copies upon all counsel of record.

_____